[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE
On October 20, 1994, the plaintiffs, Roseanna Farone, Nicholas Farone and Rose Yocum, filed a seven count revised complaint against the defendants, the New Haven Coliseum, the City of New Haven and the Board of Education for the City of New Haven (Board of Education). Counts five and six allege negligence against the Board of Education, by Roseanna Farone and Rose Yocum respectively. Count seven alleges negligence against all defendants for past and future medical expenses for Roseanna Farone; paragraphs 20-29 of count seven are directed only at the Board of Education.
On November 29, 1994, the Board of Education filed a motion to strike the fifth count, the sixth count and paragraphs 20 through 29 of the seventh count of the plaintiffs' revised complaint. On January 27, 1995, the plaintiffs filed an objection to the motion to strike.
The plaintiffs' revised complaint alleges the following facts: that the Board of Education is a quasi-municipal corporation established by General Statutes § 10-241 and Article XXXI of the New Haven Charter; that on February 16, 1990, the Board of Education leased, operated and controlled the premises located at 275 South Orange Street, New Haven, Connecticut, known as the New Haven Veteran's Memorial Coliseum (Coliseum), upon which it was to conduct a high school hockey game; on February 16, 1990, the Board CT Page 9865 of Education provided security personnel to the Coliseum for the high school hockey game; that on February 16, 1990, the plaintiffs, Roseanna Farone and Rose Yocum, while business patrons at the Coliseum, were assaulted by patrons of the Coliseum, causing the plaintiffs to suffer injuries and damages; and that the plaintiffs' damages were due to the negligence of the Board of Education in various respects.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint." NovametrixMedical Services v. BOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). "A motion to strike admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). "In ruling on a motion to strike, the court is "limited to the facts alleged in the . . . [non-moving party's pleading]" and "must construe those facts most favorably to the . . . [non-moving party]." Novametrix Medical Services v. BOC Group, Inc., supra,224 Conn. 215. "This includes the facts necessarily implied and fairly provable under the allegations." Westport Bank Trust Co.v. Corcoran, Malin Aresco, 221 Conn. 490, 495, 605 A.2d 862
(1992). "Notwithstanding the procedural posture of a motion to strike, th[e] court has approved the practice of deciding the issue of governmental immunity as a matter of law." Gordon v. BridgeportHousing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988).
The Board of Education moves to strike the fifth count, the sixth count, and paragraphs 20 through 29 of the seventh count of the plaintiffs' complaint on the grounds that (1) the Board of Education is a municipal entity and is therefore immune from liability under the doctrine of governmental immunity and (2) the Board of Education is an agent of the state and is therefore immune from liability under the doctrine of sovereign immunity.
The plaintiff objects to the Board of Education's motion to strike on the ground that (1) the issues of governmental and sovereign immunity are not properly decided by a motion to strike and (2) when a municipality assumes the duty of a non-governmental entity, it is not immune from liability for the negligent performance of that duty under either governmental or sovereign immunity.
"Generally, governmental immunity must be specially pleaded."Gauvin v. New Haven, 187 Conn. 180, 184, 445 A.2d 1 (1982). If, however, "it is apparent from the face of the complaint that the municipality was engaging in a governmental function while CT Page 9866 performing the acts and omissions complained of by the plaintiff, the defendant [is] not required to plead governmental immunity as a special defense and [may] attack the legal sufficiency of the complaint through a motion to strike." Brown v. Branford, 12 Conn. App. 106,111 n. 3, 529 A.2d 743 (1987). "Where a complaint contains sufficient allegations so that it can be determined, as a matter of law, that the municipality was engaged in the performance of a governmental function, no answer need be filed alleging what is already obvious from the allegations of the complaint." Trzaskav. City of Hartford, 12 Conn. Sup. 301, 302, ___ A.2d ___ (1943).
"A town board of education can be an agent of the state for some purposes and an agent of the municipality for others. . . . A town board of education thus potentially enjoys immunity under two different theories of immunity for acts carried out within its governmental capacity. For example, [w]e have long recognized the common-law principle [of sovereign immunity] that the state cannot be sued without its consent. . . . Alternatively, [a]t common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts." (Citations omitted; emphasis in original; internal quotation marks omitted.)Heigl v. Board of Education of New Cannan, 218 Conn. 1, 3-4,587 A.2d 423 (1991).
"A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity. . . . Governmental immunity, however, is not a blanket protection for all official acts. For example, [a] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts." (Citations omitted; internal quotation marks omitted.) Id., 4.
In differentiating between ministerial and discretionary acts, the Connecticut Supreme Court has noted that "[g]overnmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Citations omitted; internal quotation marks omitted.)Heigl v. Board of Education of New Cannan, supra, 218 Conn. 5.
In Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180, the Connecticut Supreme Court established that "the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to CT Page 9867 liability on the part of the municipality. . . ." Accordingly, the court noted that "the failure to provide, or inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." (Internal quotation marks omitted.) Id.
The Gordon court stated that "[c]onsiderable latitude must be allowed to [a police chief] in the deployment of his officers, or in enforcing discipline. Indeed, because a police chief's authority to assign his officers to particular duties is deemed a matter that concerns the public safety, he may not be deprived of his power to exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time. . . . [T]he general deployment of police officers is a discretionary governmental action as a matter of law." (Citations omitted; internal quotation marks omitted.) Id., 180.
In Couture v. Board of Education, 6 Conn. App. 309, 312-13,505 A.2d 432 (1986), the appellate court held that "[i]t is indisputable . . . that municipalities, by providing public education, are engaged in a governmental duty. The state is required by article VIII, § 1, of the Connecticut constitution to provide free elementary and secondary education. By statutory enactment the legislature has delegated this responsibility to the local boards. . . ." (Internal quotation marks omitted.)
In Couture, the court further noted that "[p]ursuant to their duty to provide public education, the town boards are given substantial discretion to determine educational policy. . . . Included in this authority is the power to decide that sporting events are a necessary or desirable part of the town's educational program." Id., 313. The court held that, "in the absence of any showing to the contrary . . . the defendants, in sponsoring . . . [a high school] football game, were acting as agent[s] or representative[s] of the state in carrying out its public purposes." (Internal quotation marks omitted.) Id.
In the instant case, the plaintiff has alleged that the Board of Education was engaged in the act of holding a high school hockey game at the New Haven Coliseum. The plaintiffs allege that the Board of Education was negligent in that it failed to provide competent and adequate supervision for the safety of its patrons and failed to provide an adequate staff of personnel on the premises to control unruly patrons. Inasmuch as such events are part of the town's educational program, this was a governmental CT Page 9868 act.
The aforementioned acts of the Board of Education are analogous to those of a police department in the disbursement of its personnel. As with a police department, considerable latitude must be afforded in assessing the manner in which discipline was enforced. Accordingly, the acts of the Board of Education concerning the deployment of security personnel at the New Haven Coliseum are of a discretionary nature. Therefore, any acts or omissions in connection therewith do not give rise to liability on the part of the Board of Education. The Board of Education is immune from liability in that the events which give rise to the plaintiffs' allegations were discretionary governmental acts. Therefore, the plaintiffs' claims against the Board of Education are barred by the doctrine of governmental immunity.
Accordingly, the Board of Education's motion to strike the fifth count, the sixth count, and paragraphs 20 through 29 of the seventh count of the plaintiff's complaint[1] is granted.
Robert A. Martin, Judge